UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JANNA LEE CASSIDY,<br><br>　　　　Plaintiff,<br><br>　　v.<br><br>COMMISSIONER OF SOCIAL SECURITY,<br><br>　　　　Defendant. | Case No. 1:24-cv-00922-HBK<br><br>ORDER REMANDING CASE TO COMMISSIONER OF SOCIAL SECURITY[1]<br><br>(Doc. Nos. 12, 14) |

　　　　Janna Lee Cassidy ("Plaintiff"), seeks judicial review of a final decision of the Commissioner of Social Security ("Commissioner" or "Defendant") denying her application for supplemental security income under the Social Security Act. (Doc. No. 1). The matter is currently before the undersigned on the parties' briefs, which were submitted without oral argument. (Doc. Nos. 12, 14). For the reasons set forth more fully below, the Court grants Plaintiff's motion for summary judgment, denies Defendant's motion for summary judgment, and remands the matter to the Commissioner of Social Security for further administrative proceedings.

////

---

[1] Both parties have consented to the jurisdiction of a magistrate judge, in accordance with 28 U.S.C. §636(c)(1). (Doc. No. 8).

## I. JURISDICTION

Plaintiff protectively filed for supplemental security income on July 15, 2021, alleging a disability onset date of March 1, 1994. (AR 182-90). Benefits were denied initially (AR 52-65, 101-05) and upon reconsideration (AR 66-100, 107-11). Plaintiff appeared for a hearing before an administrative law judge ("ALJ") on February 21, 2024. (AR 34-51). Plaintiff testified at the hearing and was represented by counsel. (*Id.*). The ALJ denied benefits (AR 14-33) and the Appeals Council denied review (AR 1-6). The matter is before the Court under 42 U.S.C. § 405(g) and 42 U.S.C. § 1383(c)(3).

## II. BACKGROUND

The facts of the case are set forth in the administrative hearing and transcripts, the ALJ's decision, and the briefs of Plaintiff and Commissioner. Only the most pertinent facts are summarized here.

Plaintiff was 62 years old at the time of the hearing. (AR 41). She testified that she completed twelfth grade. (AR 41-42). She lives with her daughter, her daughter's husband, and their two kids. (AR 41). She has no relevant work history. (AR 42, 27). Plaintiff testified that she is unable to work because of obsessive compulsive disorder. (AR 42). She reported "rituals" and "rechecking" throughout her "whole day." (AR 45). Plaintiff testified that she mostly stays home because if she goes out, she obsesses more. (AR 45). She reported her OCD "hasn't really changed" with therapy. (AR 47).

## III. STANDARD OF REVIEW

A district court's review of a final decision of the Commissioner of Social Security is governed by 42 U.S.C. § 405(g). The scope of review under § 405(g) is limited; the Commissioner's decision will be disturbed "only if it is not supported by substantial evidence or is based on legal error." *Hill v. Astrue*, 698 F.3d 1153, 1158 (9th Cir. 2012). "Substantial evidence" means "relevant evidence that a reasonable mind might accept as adequate to support a conclusion." *Id.* at 1159 (quotation and citation omitted). Stated differently, substantial evidence equates to "more than a mere scintilla[,] but less than a preponderance." *Id.* (quotation and citation omitted). In determining whether the standard has been satisfied, a reviewing court must

consider the entire record as a whole rather than searching for supporting evidence in isolation. *Id.*

In reviewing a denial of benefits, a district court may not substitute its judgment for that of the Commissioner. "The court will uphold the ALJ's conclusion when the evidence is susceptible to more than one rational interpretation." *Tommasetti v. Astrue*, 533 F.3d 1035, 1038 (9th Cir. 2008). Further, a district court will not reverse an ALJ's decision on account of an error that is harmless. *Id*. An error is harmless where it is "inconsequential to the [ALJ's] ultimate nondisability determination." *Id*. (quotation and citation omitted). The party appealing the ALJ's decision generally bears the burden of establishing that it was harmed. *Shinseki v. Sanders*, 556 U.S. 396, 409-10 (2009).

## IV.   SEQUENTIAL EVALUATION PROCESS

A claimant must satisfy two conditions to be considered "disabled" within the meaning of the Social Security Act. First, the claimant must be "unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 1382c(a)(3)(A). Second, the claimant's impairment must be "of such severity that he is not only unable to do his previous work[,] but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. § 1382c(a)(3)(B).

The Commissioner has established a five-step sequential analysis to determine whether a claimant satisfies the above criteria. See 20 C.F.R. § 416.920(a)(4)(i)-(v). At step one, the Commissioner considers the claimant's work activity. 20 C.F.R. § 416.920(a)(4)(i). If the claimant is engaged in "substantial gainful activity," the Commissioner must find that the claimant is not disabled. 20 C.F.R. § 416.920(b).

If the claimant is not engaged in substantial gainful activity, the analysis proceeds to step two. At this step, the Commissioner considers the severity of the claimant's impairment. 20 C.F.R. § 416.920(a)(4)(ii). If the claimant suffers from "any impairment or combination of impairments which significantly limits [his or her] physical or mental ability to do basic work

activities," the analysis proceeds to step three. 20 C.F.R. § 416.920(c). If the claimant's impairment does not satisfy this severity threshold, however, the Commissioner must find that the claimant is not disabled. 20 C.F.R. § 416.920(c).

At step three, the Commissioner compares the claimant's impairment to severe impairments recognized by the Commissioner to be so severe as to preclude a person from engaging in substantial gainful activity. 20 C.F.R. § 416.920(a)(4)(iii). If the impairment is as severe or more severe than one of the enumerated impairments, the Commissioner must find the claimant disabled and award benefits. 20 C.F.R. § 416.920(d).

If the severity of the claimant's impairment does not meet or exceed the severity of the enumerated impairments, the Commissioner must pause to assess the claimant's "residual functional capacity." Residual functional capacity (RFC), defined generally as the claimant's ability to perform physical and mental work activities on a sustained basis despite his or her limitations, 20 C.F.R. § 416.945(a)(1), is relevant to both the fourth and fifth steps of the analysis.

At step four, the Commissioner considers whether, in view of the claimant's RFC, the claimant is capable of performing work that he or she has performed in the past (past relevant work). 20 C.F.R. § 416.920(a)(4)(iv). If the claimant is capable of performing past relevant work, the Commissioner must find that the claimant is not disabled. 20 C.F.R. § 416.920(f). If the claimant is incapable of performing such work, the analysis proceeds to step five.

At step five, the Commissioner considers whether, in view of the claimant's RFC, the claimant is capable of performing other work in the national economy. 20 C.F.R. § 416.920(a)(4)(v). In making this determination, the Commissioner must also consider vocational factors such as the claimant's age, education, and past work experience. 20 C.F.R. § 416.920(a)(4)(v). If the claimant is capable of adjusting to other work, the Commissioner must find that the claimant is not disabled. 20 C.F.R. § 416.920(g)(1). If the claimant is not capable of adjusting to other work, analysis concludes with a finding that the claimant is disabled and is therefore entitled to benefits. 20 C.F.R. § 416.920(g)(1).

The claimant bears the burden of proof at steps one through four above. *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999). If the analysis proceeds to step five, the burden shifts to the

4

Commissioner to establish that (1) the claimant is capable of performing other work; and (2) such work "exists in significant numbers in the national economy." 20 C.F.R. § 416.960(c)(2); *Beltran v. Astrue*, 700 F.3d 386, 389 (9th Cir. 2012).

## V.    ALJ'S FINDINGS

At step one, the ALJ found that Plaintiff has not engaged in substantial gainful activity since July 15, 2021, the application date. (AR 19). At step two, the ALJ found that Plaintiff has the following severe impairments: major depressive disorder; obsessive compulsive disorder (OCD); and post-traumatic stress disorder (PTSD). (AR 19). At step three, the ALJ found that Plaintiff does not have an impairment or combination of impairments that meets or medically equals the severity of a listed impairment. (AR 20). The ALJ then found that Plaintiff has the RFC to "perform a full range of work at all exertional levels but with the following nonexertional limitations. She can complete a normal workday and work week at a consistent pace for routine tasks." (AR 21). At step four, the ALJ found that Plaintiff has no past relevant work. (AR 27). At step five, the ALJ found that considering Plaintiff's age, education, work experience, and RFC, there are jobs that exist in significant numbers in the national economy that Plaintiff can perform. (AR 28). On that basis, the ALJ concluded that Plaintiff has not been under a disability, as defined in the Social Security Act, from July 15, 2021, the date the application was filed. (AR 28).

## VI.    ISSUES

Plaintiff seeks judicial review of the Commissioner's final decision denying her supplemental security income benefits under Title XVI of the Social Security Act. (Doc. No. 1).

1. Whether the RFC was supported by substantial evidence in light of the ALJ's consideration of the medical opinion evidence; and
2. Whether the ALJ properly considered Plaintiff's symptom claims.

(Doc. No. 12 at 4-15).

## VII.    DISCUSSION

### A. RFC/Medical Opinions

A claimant's RFC is "the most [the claimant] can still do despite [his or her] limitations."

5

20 C.F.R. § 404.1545(a); 20 C.F.R. § 416.945(a). The RFC assessment is an administrative finding based on all relevant evidence in the record, not just medical evidence. *Bayliss v. Barnhart*, 427 F.3d 1211, 1217 (9th Cir. 2005). In determining the RFC, the ALJ must consider all limitations, severe and non-severe, that are credible and supported by substantial evidence in the record. (*Id.*) (RFC determination will be affirmed if supported by substantial evidence). However, an ALJ's RFC findings need only be consistent with relevant assessed limitations and not identical to them. *Turner v. Comm'r of Soc. Sec.*, 613 F.3d 1217, 1222-23 (9th Cir. 2010). Ultimately, a claimant's RFC is a matter for the ALJ to determine. *See Vertigan v. Halter*, 260 F.3d 1044, 1049 (9th Cir. 2001) ("It is clear that it is the responsibility of the ALJ ... to determine residual functional capacity.").

Plaintiff argues the ALJ erred in assessing the RFC because he improperly considered the medical opinions of N. Haroun, M.D. and Michelle Maciel, Psy.D. (Doc. No. 12 at 4-11). For claims filed on or after March 27, 2017, new regulations apply that change the framework for how an ALJ must evaluate medical opinion evidence. *Revisions to Rules Regarding the Evaluation of Medical Evidence*, 2017 WL 168819, 82 Fed. Reg. 5844-01 (Jan. 18, 2017); 20 C.F.R. § 404.1520c. The new regulations provide that the ALJ will no longer "give any specific evidentiary weight…to any medical opinion(s)…" *Revisions to Rules*, 2017 WL 168819, 82 Fed. Reg. 5844, at 5867-68; see 20 C.F.R. § 404.1520c(a). Instead, an ALJ must consider and evaluate the persuasiveness of all medical opinions or prior administrative medical findings from medical sources. 20 C.F.R. § 404.1520c(a) and (b). The factors for evaluating the persuasiveness of medical opinions and prior administrative medical findings include supportability, consistency, relationship with the claimant (including length of the treatment, frequency of examinations, purpose of the treatment, extent of the treatment, and the existence of an examination), specialization, and "other factors that tend to support or contradict a medical opinion or prior administrative medical finding" (including, but not limited to, "evidence showing a medical source has familiarity with the other evidence in the claim or an understanding of our disability program's policies and evidentiary requirements"). 20 C.F.R. § 404.1520c(c)(1)-(5).

Supportability and consistency are the most important factors, and therefore the ALJ is

required to explain how both factors were considered. 20 C.F.R. § 404.1520c(b)(2).

Supportability and consistency are explained in the regulations:

> (1) Supportability. The more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s), the more persuasive the medical opinions or prior administrative medical finding(s) will be.
>
> (2) Consistency. The more consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) or prior administrative medical finding(s) will be.

20 C.F.R. § 404.1520c(c)(1)-(2). The ALJ may, but is not required to, explain how the other factors were considered. 20 C.F.R. § 404.1520c(b)(2). However, when two or more medical opinions or prior administrative findings "about the same issue are both equally well-supported ... and consistent with the record ... but are not exactly the same," the ALJ is required to explain how "the other most persuasive factors in paragraphs (c)(3) through (c)(5)" were considered. 20 C.F.R. § 404.1520c(b)(3).

The Ninth Circuit has additionally held that the new regulatory framework displaces the longstanding case law requiring an ALJ to provide "specific and legitimate" or "clear and convincing" reasons for rejecting a treating or examining doctor's opinion. *Woods v. Kijakazi*, 32 F.4th 785 (9th Cir. 2022). Nonetheless, in rejecting an examining or treating doctor's opinion as unsupported or inconsistent, an ALJ must still provide an explanation supported by substantial evidence. *Id.* at 792. This means that the ALJ "must 'articulate ... how persuasive' [he or she] finds 'all of the medical opinions' from each doctor or other source ... and 'explain how [he or she] considered the supportability and consistency factors' in reaching these findings." *Id.* (citing 20 C.F.R. §§ 404.1520c(b), 404.1520(b)(2)).

### 1. N. Haroun, M.D.

In May 2022, state agency psychological consultant N. Haroun, M.D. opined that Plaintiff had moderate limitations in her ability to complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods, and a "moderate impairment in managing

7

self." (AR 95-96). The ALJ found Dr. Haroun's opinion "more persuasive" because he was able to review more evidence than earlier state agency medical opinions. (AR 27). The ALJ also noted that Dr. Haroun's findings "are somewhat vague with regard to actual limitations, but they are generally consistent with the claimant's reported improvement with medication and therapy; her generally mild findings on mental status exams; and her ability to travel across the country. Given her limitation in the area of adapting and managing, it is reasonable to find that she could complete a normal workday and work week at a consistent pace for routine tasks." (AR 27).

Plaintiff argues the ALJ erred by failing to include the moderate limitations into the assessed RFC or provide any "rationale to support the decision to not include" the assessed limitations. (Doc. No. 12 at 6-7). "Rather, the ALJ's RFC is almost the exact opposite of the opined limitations from Dr. Haroun's opinion. Specifically, Dr. Haroun opined Plaintiff had limitations in the very thing the ALJ stated that Plaintiff could do: complete a normal workweek and maintain pace. … [Thus, the] ALJ's RFC determination contains limitations that are directly contradicting the opined limitations from the only medical opinion that the ALJ found persuasive with absolutely no explanation as to how the ALJ reached this conclusion." (Doc. No. 12 at 7).

Defendant argues the ALJ reasonably accounted for Dr. Haroun's opinion that Plaintiff had "moderate impairment in managing self" with an RFC for completing "a normal workday and work week at a consistent pace for routine tasks." (Doc. No. 14 at 9-10). This argument is unavailing on its face. It is unclear to the Court how the RFC that specifically found Plaintiff could complete a "normal workday and work week at a consistent pace for routine tasks" accounts for Dr. Haroun's assessment that Plaintiff was moderately limited in his ability to "complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods." (AR 95). In addition, Defendant argues any error would be harmless because where, as here, "a medical opinion doesn't provide specific attendance restrictions, …. An ALJ has not improperly rejected medical-opinion evidence without explanation by not expressly addressing attendance limits in the RFC." (Doc. No. 14 at 10 (citing *Tamra W. v. O'Malley*, 2024 WL 283684, at *5 (C.D. Cal. Jan. 25, 2024)). Defendant's argument is well taken to the extent that

8

1 Dr. Haroun does not specify exactly how much Plaintiff would miss work, and Plaintiff does not
2 offer specific argument as to how the moderate limitations "should be translated into concrete
3 RFC restrictions." (Doc. No. 14 at 10 (citing *Xiong v. Kijakazi*, 2022 WL 2119029, at *15 (E.D.
4 Cal. June 13, 2022)). Regardless, this case is distinguishable from the instant matter because
5 here, unlike the cases cited by Defendant, the ALJ did "expressly address attendance limits in the
6 RFC" by finding Plaintiff had the RFC to "complete a normal workday and work week at a
7 consistent pace for routine tasks." (AR 21); *see Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 886
8 (9th Cir. 2006) ("an ALJ is not free to disregard properly supported limitations"); *Byrd v. Colvin*,
9 2017 WL 980559, at *8 (D. Or. Mar. 14, 2017) ("Here, the ALJ gave great weight to [the]
10 opinion, but the RFC failed to take into account all of the limitations identified by [the doctor],
11 and the ALJ failed to explain why she did not include the limitations in the RFC. As a result, the
12 ALJ erred in formulating the RFC.").
13     Based on the foregoing, the ALJ's failure to either provide reasons, supported by
14 substantial evidence, to reject those limitations or to properly incorporate those limitations into
15 the assessed RFC, constitutes error. *See Robbins*, 466 F.3d at 886; *see also Peerzay v. Comm'r of*
16 *Soc. Sec.*, 2025 WL 915574, at *7 (E.D. Cal. Mar. 26, 2024) ("The Court will follow the weight
17 of recent cases and find that the ALJ erred in failing to account for the [consultative examiner's]
18 limitations concerning Plaintiff's ability to complete a workday/workweek."). Further, on the
19 record before the Court it cannot conclude that the error was harmless. *See Stout v. Comm'r of*
20 *Soc. Sec. Admin.*, 454 F.3d 1050, 1056 (9th Cir. 2006) (the reviewing court cannot consider an
21 error harmless unless it "can confidently conclude that no reasonable ALJ, when fully crediting
22 the [evidence], could have reached a different disability determination"). On remand, the ALJ
23 must reconsider Dr. Haroun's opinion along with the relevant medical evidence and, if necessary,
24 reassess the RFC.
25     **2. Michelle Maciel, Psy.D.**
26     In October 2021, psychologist Dr. Michelle Maciel examined Plaintiff and opined that she
27 was severely impaired in her ability to perform simple and repetitive tasks, perform detailed and
28 complex tasks, and maintain regular attendance and complete a normal workday from a

psychiatric standpoint "per reports and record related to [symptoms] of OCD]."  (AR 313-14). The ALJ found Dr. Maciel's opinion unpersuasive for several reasons.

First, as to supportability, the ALJ noted that at the time of Dr. Maciel's consultative examination, "there was no indication in the record that [Plaintiff] had any treatment for OCD.  In fact, at [Plaintiff's] visit with Ms. Heinemann in June of 2021, Ms. Heinemann specifically noted that [Plaintiff] was not under the care of a psychiatrist and had not been formally diagnosed with OCD to the best of her knowledge.  Therefore, it appears Dr. Maciel's opinion is based entirely on her exam findings and the reports of [Plaintiff] as that was the only other medical evidence at the time of the consultative examination."  (AR 27).  Defendant argues "the ALJ reasonably found Dr. Maciel's opinion lacked supportability because it was largely based on [her] unreliable self-reports."  (Doc. No. 14 at 12).  Defendant is correct that an opinion may be discounted if it relies largely on claimant's unreliable self-report.  *Bayliss*, 427 F.3d at 1217.  However, it is well-settled in the Ninth Circuit that "[p]sychiatric evaluations may appear subjective, especially compared to evaluation in other medical fields.  Diagnoses will always depend in part on the patient's self-report, as well as on the clinician's observations.  But such is the nature of psychiatry.  Thus, the rule allowing an ALJ to reject opinions based on self-reports does not apply in the same manner to opinions regarding mental illness."  *Buck v. Berryhill*, 869 F.3d 1040, 1049 (9th Cir. 2017) (internal citations omitted); *see also Romero v. O'Malley*, 2024 WL 4919515, at *2 (9th Cir. Nov. 29, 2024) (finding the ALJ erred by finding mental health opinion lacked supportability because it was based on a summary of plaintiff's complaints, diagnoses, and treatment).  Thus, as argued by Plaintiff, substantial evidence does not support the ALJ's finding that Dr. Maciel's opinion was unsupported because it was based on Plaintiff's self-reports regarding her OCD symptoms.

In addition, also as to supportability, the ALJ found Dr. Maciel's opinion unpersuasive because her examination "had generally mild findings" aside from Plaintiff's "reported awareness of the irrational nature of her obsessiveness and compulsiveness, where she described her mood as 'pretty down,' and her affect," and Dr. Maciel opined that Plaintiff's OCD was treatable.  (AR 27).  In considering supportability, "the more relevant the medical evidence and supporting

explanations presented by a medical source are to support" the medical opinion, the more persuasive the medical opinion will be. 20 C.F.R. § 416.920c(c)(1). However, as noted by Plaintiff, when considering the medical opinion evidence, the ALJ must do more than state a conclusion; rather, the ALJ must "set forth his own interpretations and explain why they, rather than the doctors', are correct." (Doc. No. 12 at 10); *Reddick v. Chater*, 157 F.3d 715, 725 (9th Cir. 1998) ("This can be done by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings."); *Brown-Hunter v. Colvin*, 806 F.3d 487, 495 (9th Cir. 2015) (a court "cannot substitute [the court's] conclusions for the ALJ's, or speculate as to the grounds for the ALJ's conclusions. Although the ALJ's analysis need not be extensive, the ALJ must provide some reasoning in order for [the court] to meaningfully determine whether the ALJ's conclusions were supported by substantial evidence."). Here, the ALJ does not explain how the severe limitations specifically assessed by Dr. Maciel based on Plaintiff's reported OCD symptoms are unsupported because her examination "had generally mild findings," while also acknowledging Dr. Maciel's examination findings specifically related to Plaintiff's OCD including down mood, worried and tense affect, and thought content that "reflected awareness of the irrational nature of her obsessiveness and compulsiveness, and distress about the constricted life she leads which is subject to her OCD." (AR 312-13). Thus, particularly in light of the ALJ's erroneous rejection of Dr. Maciel's opinion because it was based on Plaintiff's self-reports as opposed to "medical evidence," as discussed above, the Court finds the ALJ's general reliance on Dr. Maciel's "mild" examination findings similarly does not rise to the level of substantial evidence to find the entirety of the opined limitations unpersuasive.

As to the consistency factor, Defendant argues the ALJ properly found Dr. Maciel's opinion was inconsistent with Plaintiff's "lack of OCD treatment." (Doc. No. 14 at 12). In support of this argument, Defendant relies on the ALJ's reference, without citation to the record, to a June 2021 treatment note observing that Plaintiff "is not currently under the care of a psychiatrist and has not been formally diagnosed with OCD to the best of my knowledge." (AR 27, 291). The Court is unclear as to whether this treatment note was cited by the ALJ as evidence

of inconsistency between Dr. Marciel's opinion and evidence from other medical sources, or rather, to support the ALJ's erroneous finding under the supportability factor, as discussed *supra*, that Dr. Maciel's opinion was based largely on Plaintiff's self-reports because Dr. Maciel's examination findings were "the only other medical evidence at the time of the consultative examination." (AR 27). Regardless, even were the Court to consider this reasoning, Defendant does not argue, nor does the ALJ explain, how Dr. Maciel's opinion is inconsistent with the longitudinal medical record based on a single treatment provider's observation that Plaintiff's was not receiving treatment for OCD in June 2021, particularly in light of Plaintiff's identical report to Dr. Maciel in October 2021 that she had no history of psychiatric hospitalization or psychotherapy. (*See* AR 311 (reporting she was taking Prozac and hydroxyzine as needed)). Thus, to the extent the ALJ found Dr. Maciel's opinion unpersuasive because it was inconsistent with the medical record, this finding is not supported by substantial evidence.

Based on the foregoing, the ALJ's finding that Dr. Maciel's opinion was unpersuasive is not supported by substantial evidence. On remand, the ALJ should reconsider Dr. Maciel's medical opinion along with all relevant medical evidence, and, if necessary, reassess the RFC.

**B. Additional Assignment of Error**

Plaintiff additionally argues that the ALJ failed to properly consider Plaintiff's subjective complaints. (Doc. No. 12 at 11-15). In light of the finding, discussed in detail *supra*, that the medical opinion evidence must be reconsidered based in part on the ALJ's improper rejection of Dr. Maciel's opinion due to reliance on Plaintiff's self-reported symptoms, the Court declines to address this challenge in detail here. On remand, the ALJ is instructed to reconsider the medical opinion evidence and conduct a new sequential analysis, including a reassessment of Plaintiff's symptom claims, the RFC, and the step five findings if necessary.

**C. Remedy**

The Court finds that further administrative proceedings are appropriate. *See Treichler v. Comm'r of Soc. Sec. Admin.*, 775 F.3d 1090, 1103-04 (9th Cir. 2014) (remand for benefits is not appropriate when further administrative proceedings would serve a useful purpose). Here, the ALJ improperly considered the medical opinion evidence, which calls into question whether the

assessed RFC, and resulting hypothetical propounded to the vocational expert, are supported by substantial evidence. "Where," as here, "there is conflicting evidence, and not all essential factual issues have been resolved, a remand for an award of benefits is inappropriate." *Treichler*, 775 F.3d at 1101. On remand, the ALJ should reevaluate the medical opinion evidence, as well as Plaintiff's symptom claims. If necessary, the ALJ should order additional consultative examinations and, if appropriate, take additional testimony from medical experts. The ALJ should conduct a new sequential analysis, reassess Plaintiff's RFC and, if necessary, take additional testimony from a vocational expert which includes all of the limitations credited by the ALJ.

Accordingly, it is **ORDERED**:

1. Plaintiff's Motion for Summary Judgment (Doc. No. 12) is GRANTED.
2. Defendant's Cross-Motion for Summary Judgment (Doc. No. 14) is DENIED.
3. Pursuant to sentence four of 42 U.S.C.§ 405(g), the Court REVERSES the Commissioner's decision and REMANDS this case back to the Commissioner of Social Security for further proceedings consistent with this Order.
4. An application for attorney fees may be filed by separate motion within thirty (30) days.
5. The Clerk shall enter judgment in favor of the Plaintiff, terminate any pending motions/deadlines, and close this case.

Dated:   September 29, 2025

HELENA M. BARCH-KUCHTA
UNITED STATES MAGISTRATE JUDGE